IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN R. KRAVITZ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JEFFREY A. NIEZGODA, | : | |
| Defendant. | : | No. 12-487 |

**MEMORANDUM**

PRATTER, J.                                                                                             SEPTEMBER 20, 2012

Dr. Steven Kravitz filed a one count complaint in the Court of Common Pleas of Bucks County charging Dr. Jeffrey Niezgoda with defamation. Dr. Niezgoda subsequently removed the case to this Court on diversity grounds and moved for dismissal under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. Because Dr. Niezgoda does have sufficient minimum contacts with the forum state such that this Court has personal jurisdiction over him and venue is proper in this district, the Court will deny Dr. Niezgoda's motion.

**BACKGROUND**

Dr. Niezgoda is a member of the Board of Directors of the Council for Medical Education and Testing ("Council"), located in Richboro, Pennsylvania. Dr. Kravitz is the Executive Director of that organization. Dr. Niezgoda has attended a Council meeting in Philadelphia, and has participated in three separate board meetings by telephone. Dr. Niezgoda also is a member of the Board of Directors of the American Professional Wound Care Association ("Association"), which is headquartered in Feasterville, Bucks County, Pennsylvania, and has attended the Association's in-person conferences in Philadelphia on three occasions. Dr. Kravitz is the immediate past Executive Director of the Association.

According to the Amended Complaint, Dr. Niezgoda made defamatory statements about Dr. Kravitz to Dr. Robert Bartlett, Dr. James McGuire, Dr. Adrianne Smith and Dr. Allen Jacobs.  First, Dr. Niezgoda called Dr. Robert Bartlett, President of the Council, to falsely inform him "that [Dr. Kravitz] had misused and/or stolen funds from the [Association] and falsely suggested that the Federal Bureau of Investigation was conducting a criminal investigation of Plaintiff."  Am. Compl. at ¶ 18.  Further, Dr. Niezgoda requested that Dr. Kravitz be removed as Executive Director of the Council.   Dr. Niezgoda made a similar call to Dr. James McGuire.  At the time of the call, Dr. Niezgoda was aware that Dr. McGuire lives in Pennsylvania, that he was the Director of the Wound Healing Center of Temple University School of Podiatric Medicine, which is located in this judicial district, and that Dr. Kravitz was a member of the faculty there.  Dr. Kravitz also accuses Dr. Niezgoda of making similar defamatory remarks to Dr. Adrianne Smith in the fall of 2011.  Last, Dr. Kravitz claims Dr. Niezgoda made a defamatory telephone call to Dr. Allen Jacobs, in which he disclosed the same false information.

Each of these statements relates to Dr. Kravitz's involvement in the Association, which is located in Pennsylvania.  Additionally, the Amended Complaint alleges that these statements were published to the nationwide community of physicians and medical professionals involved in wound care.  As a result, Dr. Kravitz claims that he has suffered damage, including injury to his professional reputation, and that this has lowered him in the estimation of the medical community by deterring third persons from associating with him.  He has suffered the most damage in Pennsylvania.

LEGAL STANDARDS

    A.    **Personal Jurisdiction**

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction

over a nonresident to the extent allowed by the law of the state in which it sits.  *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984).  Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-resident defendants "to the constitutional limits of the due process clause of the fourteenth amendment."  *Mellon Bank (East) PSFS, Nat'l Ass'n. v. Farino*, 920 F.2d 1217, 1221 (3d Cir. 1992) (interpreting 42 Pa. Cons. Stat. Ann. § 5322(b)).

Due process requires that (1) the defendant have "minimum contacts" with the forum state, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "[Minimum] contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

A federal court may exercise personal jurisdiction over a defendant in one of two ways.  General personal jurisdiction is appropriate when a cause of action "arises from the defendant's non-forum related activities," and the defendant's contacts with the forum are continuous and systematic. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 151 n. 3 (3d Cir. 1996); *see also Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 n. 1 (3d Cir. 2002) (noting distinction between general and specific jurisdiction).  By contrast, specific personal jurisdiction can be invoked when a cause of action arises from the defendant's forum-related activities. *Vetrotex*, 75 F.3d at 151.

### B. Venue

In a diversity matter, venue is proper only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  As to 28 U.S.C. § 1391(a)(2), the Third Circuit Court of Appeals has explained that:

> Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute . . . . In most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial . . . . The test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim," theoretically a more easily demonstrable circumstance than where a "claim arose." Although the statute no longer requires a court to select the "best" forum, the weighing of "substantial" may at times seem to take on that flavor.

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (quotations and citations omitted).

### DISCUSSION

#### A.    Personal Jurisdiction

Dr. Niezgoda claims that this Court has neither general nor specific personal jurisdiction over him.  He submits no affidavit or other evidence contradicting the allegations of the Amended Complaint.  In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true and the burden is on the plaintiff to establish the requisite minimum contacts with reasonable particularity.  *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1996).  However, "the law in the Third Circuit is not clear as to what a Court should consider in deciding whether the Plaintiff has

met this burden." *Shanks v. Wexner*, Civ. A. 02-7671, 2003 WL 1343018, at *2 (E.D. Pa. Mar. 18, 2003). One line of cases requires affirmative proof of minimum contacts, while another line of cases says that "the Plaintiff can merely rely on contacts alleged in his pleadings." *Id.* In *Shanks*, the court held that "[b]ecause the Defendants did not attempt to controvert any of the allegations in the Plaintiff's Complaint . . . the most fair procedure is to accept them as true for the purpose of [the 12(b)(2)] Motion." *Id.* This Court will adopt the same approach here.

Accepting Dr. Kravitz's allegations as true, the Court has no need to address general jurisdiction as Dr. Kravitz's allegations sufficiently establish specific jurisdiction over Dr. Niezgoda. When considering whether a court has specific jurisdiction over a defendant in an intentional torts case, courts employ the so-called "effects" test, based on *Calder v. Jones*, 465 U.S. 783 (1984):

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998). Applying that test here, Dr. Kravitz meets all three prongs.

The first prong of the effects test requires the plaintiff to allege that the defendant committed an intentional tort. Because defamation is an intentional tort, *Remick*, 238 F.3d at 258, Dr. Kravitz meets this prong. The second prong of the effects test states, "the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort." *IMO Indus.*, 155 F.3d at 256. In *Remick*, the Third Circuit held that "because [the plaintiff's] professional activities are centered in Pennsylvania and the allegedly defamatory letters question [the plaintiff's] professional ability, [he] may reasonably contend that he suffered the brunt of the harm in Pennsylvania." *Remick*, 238 F.3d

at 258. Dr. Kravitz's allegations are clearly analogous to the facts in *Remick*. Dr. Kravitz, who lives and works in Pennsylvania, has sufficiently alleged that Dr. Niezgoda's statements have damaged his professional reputation in the podiatric medical community in Pennsylvania. Therefore, Dr. Kravitz has satisfied the second prong.

The final prong of the effects test is that "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc.*, 155 F.3d at 256. According to the Amended Complaint, when Dr. Niezgoda placed the phone call to Dr. McGuire, Dr. Niezgoda knew that Dr. McGuire lived in Pennsylvania and that Dr. McGuire was the Director of the Wound Healing Center of the Temple University School of Podiatric Medicine, located in Pennsylvania, and a member of the faculty there. Further, Dr. Niezgoda was aware of the supervisory relationship between Dr. McGuire and Dr. Kravitz when he placed the call. Dr. Niezgoda also contacted individuals associated with the Council and the Association, both of which are based in Pennsylvania. Dr. Kravitz adequately alleges that Dr. Niezgoda targeted specific medical professionals who have supervisory relationships with Dr. Kravitz at organizations headquartered in Pennsylvania with the intention of defaming Dr. Kravitz and having him removed from his positions in these two associations. Dr. Niezgoda expressly aimed his conduct at the medical community in Pennsylvania, and as such, Dr. Kravitz has met the third prong of the effects test.

**B.  Venue**

Dr. Niezgoda also argues that venue is improper in this district. In the Third Circuit, defendants have the burden of demonstrating that venue is improper. *See, e.g.*, *Simon v. Ward*, 80 F. Supp. 2d 464, 468 (E.D. Pa. 2000).

A civil action may be brought in "a judicial district in which a substantial part of the events

or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).  In the Third Circuit, "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions' giving rise to the claim . . . ." *Cottman Transmission Sys.*, 36 F.3d at 294.  Events having merely "some tangential connection with the dispute" will not satisfy this requirement. *Id*.  However, the law "does not require that a majority of the events giving rise to the claims occurred in this District, nor that this District is the best forum for laying venue." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, No. 05-2052, 2005 U.S. Dist. LEXIS 23839, at *9 (E.D. Pa. Oct. 18, 2005) (citing *Cottman Transmission Sys.*, 36 F.3d at 294).

Courts must consider the nature of the dispute when determining whether events that led to a claim are sufficiently substantial to establish proper venue. *Cottman Transmission Sys.*, 36 F.3d at 295.  In defamation cases, it is not enough that the plaintiff may have suffered harm in a particular district. *See, e.g.*, *DaimlerChrysler Corp. v. Askinazi*, No. CIV.A. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000).  "Injury in conjunction with another event, however, may make a district a proper venue. In defamation cases, . . . courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." *Id.*  In *DaimlerChrysler Corp.*, the allegedly defamatory statements were made in Michigan, but they appeared in press accounts distributed in the Eastern District of Pennsylvania.  *Id.*  The court ruled that this was sufficient to make venue proper in the Eastern District.  *Id.*  Defamatory statements "published" via a telephone call may also be enough to make venue possible in a district.  *See, e.g.*, *Dobrick-Pierce v. Open Options, Inc.*, 2:05cv1451, 2006 U.S. Dist. LEXIS 50874, at *17 (W.D. Pa. July 25, 2006).

Dr. Kravitz's Amended Complaint alleges facts demonstrating that a substantial part of the

events or omissions giving rise to his defamation claim occurred in the Eastern District of Pennsylvania. As the Defendant has noted, "Plaintiff concedes that he is without knowledge as to the physical locations of many of [the] participants in a majority of phone calls at issue." Mem. of Law in Support of Def.'s Mot. to Dismiss at 8. However, Dr. Kravitz has alleged that Dr. Niezgoda made defamatory statements in a telephone call to Dr. McGuire, who lives and works in Pennsylvania, while Dr. McGuire was physically in the Eastern District. Those statements, thus, were published in this district. *See Dobrick-Pierce*, 2006 U.S. Dist. LEXIS 50874, at *17. The Plaintiff has also argued that the Defendant's alleged statements to Dr. McGuire were his "most targeted attacks" against Dr. Kravitz. Pl.'s Opp'n at 8.

Dr. Kravitz has also alleged that he suffered "special damage" here. Am. Compl. at ¶ 26. In defamation cases, that type of harm, along with publication, is enough to make venue proper. *DaimlerChrysler Corp.*, 2000 WL 822449, at *6. As such, venue is proper in this case.

In the alternative, Dr. Niezgoda has requested that venue be transferred to the Eastern District of Wisconsin. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a venue request, and that choice should not be lightly disturbed . . . . The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citations and quotation marks omitted). The party seeking transfer has the burden of showing that "a balancing of proper interests weigh in favor of the transfer, and unless the balance . . . is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (citations and quotation marks omitted).

When considering possible transfers of venue, courts in the Third Circuit consider "convenience of parties, convenience of witnesses, and interests of justice." *See, e.g.*, *Fellner*, 2005 U.S. Dist. LEXIS 23839, at *10 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.

1995)).  Third Circuit courts look at various private and public interests to make venue transfer determinations:

> Private interests include: (1) plaintiff's venue preference; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses, but only to the extent that witnesses may be unavailable to testify in one forum; and (6) location of books and records, limited to the extent they cannot be produced at an alternative forum. Public interests include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulty related to court congestions; (4) local interest in deciding local controversies; (5) public policies of both forums; and (6) familiarity of trial judge with applicable state law in diversity cases.

*Id.* at *11 (citing *Jumara*, 55 F.3d at 879-80).  In particular, courts in the Eastern District have noted that "convenience to witnesses weighs heavily" in deciding whether to transfer venue.  *Gonzalez v. Elec. Control Sys., Inc.*, No. 93-3107, 1993 U.S. Dist. LEXIS 12973, at *11 (E.D. Pa. Sept. 17, 1993).  To address the convenience of witnesses, the moving party should provide documents to the Court such as the names and addresses of witnesses who may be called or affidavits detailing why those witnesses would find it more convenient to testify in another judicial district.  *See, e.g.*, *id.*, at *11-12.

Dr. Niezgoda has focused on only a few factors that weigh in favor of transferring venue, including the fact that he lives in Wisconsin, that he would prefer the matter be litigated in a court there, and that any judgment against him would have to be enforced there.  Def.'s Mot. at 9.  Dr. Niezgoda has completely neglected several other important factors, however.  Notably, he has failed to provide the Court with any documentation or argument concerning how convenient such a venue change would be for potential witnesses.  It is clear from the complaint that at least a few key witnesses either live in Pennsylvania, work in this judicial district, or have other professional ties here.  While the Plaintiff did not address the alternative request for a venue change in his opposition, several other factors also weigh in the Plaintiff's favor, including his venue preference and the local

interest in deciding local controversies. Therefore, Dr. Niezgoda has not carried his very high burden to demonstrate that the balance of interests weigh strongly in his favor, and Dr. Kravitz's venue choice should not be upset.

## CONCLUSION

For the foregoing reasons, the Court will deny Dr. Niezgoda's motion. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE